Kent C. Wilson, Esq. CSB#058652
943 Imperial Avenue,
Suite "G"
Calexico, CA  92231
(760) 357-1193
(619) 923-2677 e-fax.

Attorney for Plaintiff(s)
LOURDES SANCHEZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOURDES SANCHEZ, an individual, <br><br>         Plaintiffs, <br><br>         v. <br><br> GREENPOINT MORTGAGE FUNDING, INC., BANK OF AMERICA HOME LOANS, AZTEC FORECLOSURE CORPORATION, OCWEN LOAN SERVICING, LLC., COASTAL EMPIRE MORTGAGE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for RWPO III, LLC as beneficiary and DOES 1-20, <br><br>         Defendants. <br> _____   / | Case No. 09 CV 2005 JM WMC <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTION, & EQUITABLE RELIEF** <br><br> 1. Intentional Misrepresentation <br> 2. Breach of Fiduciary Duty <br> 3. Quiet Title <br> 4. Accounting <br> 5. Violations of TILA <br> 6. Violation of RESPA <br> 7. Violation CA Bus & Prof Code §17200 <br> 8. Violation of CA Civ. Code § 2923.5 <br> 9. Violation of CA Civ. Code § 2923.6 <br> 10. Violation of CA Civ. Code § 1632 <br><br> **DEMAND FOR JURY** |

COMES NOW PLAINTIFF, LOURDES SANCHEZ, an individual, who alleges damages and seeks equitable relief against the Defendants, and each of them, as follows:

## JURISDICTION & VENUE

1

FIRST AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

1.      Jurisdiction is conferred upon the court pursuant to Title 28, § 1331 as there is a federal question and the lawsuit is based on various federal statutes.  Plaintiff rely on federal statutes 15 U.S.C.A. § 1691 et seq., 15 U.S.C.A. § 1601 et seq., 12 U.S.C.A. § 2601 et seq., and 15 U.S.C.A. § 1681, et seq. on which to base their claims.  Venue is conferred as the property is located and all transactions took place and all parties reside within San Diego County, California, which is within the boundary of the United States District Court for the Southern District of California.

## PRELIMINARY ALLEGATIONS

2.      At all times relevant herein, Plaintiff LOURDES SANCHEZ is the owner of a single family residence in San Diego whose address is 2053 Miller Avenue, Escondido CA 92025 and is and was the borrower and Trustor on the promissory note (the "note") secured by a Deed of Trust ("TD" herein) in the loan transaction (the "loan") that is the subject of this complaint.

3.      At all times relevant herein, Plaintiff is informed and believes that Defendant GREENPOINT MORTGAGE FUNDING, INC. ("GREENPOINT")is or are a corporation doing business in San Diego, California and is or was the original lender in the loan transaction that is the subject of this complaint.

4.      At all times relevant herein, Plaintiff is informed and believes that Defendant OCWEN LOAN SERVICING, LLC ("OCWEN") and/or BANK OF AMERICA HOME LOANS ("BOA") is or are a limited liability company doing business in San Diego, California and is or was the current servicer/lender in the loan transaction that is the subject of this complaint.

5.      At all times relevant herein, Plaintiff is informed and believes that Defendant AZTEC FORECLOSURE CORPORATION and/or MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") as nominee for RWPO III, LLC ("RWPO III, LLC" or as "DOE 4") as Beneficiary is or was acting in some capacity of current Trustee or as a nominee of the TD that is the subject of this complaint.

6.      At all times relevant herein, Plaintiff is informed and believes that DEFENDANT COASTAL EMPIRE MORTGAGE ("COSTAL") is or was acting in the capacity of Broker in the loan transaction that is the subject of this complaint.

7.      At all times relevant herein, Plaintiff is informed and believes and thereon alleges that, DOES 1 through 20, inclusive, true names, identities and capacities, whether individual, corporation, association, partnership or otherwise are at this time unknown to Plaintiff who therefore sues said Defendants by such fictitious names and will so amend the complaint to show the true names and capacities of such Doe Defendant(s) when the same are ascertained.

8.      At all times relevant herein, Defendants are sued and were acting as principal(s), employer(s) and/or the agent(s), servant(s) and employee(s) of said principal(s) or employer(s), and all of the acts performed by them, or their agents, servants and employees, were performed with the knowledge and under the control of said principal(s) or employer(s) and all such acts performed by such agents, servants and/or employers, were performed within the course and scope of their authority.

## STATEMENT OF FACTS

9.      On or about July 12, 2007 Plaintiff purchased a single-family home located at 2053 Miller Avenue, Escondido CA 92025 ("Property") by borrowing $460,000 secured by a First Deed of Trust (concurrent with a second of $86,200) from DEFENDANT GREENPOINT MORTGAGE FUNDING, INC., the funding lender. On or about that date, Plaintiff executed a promissory note for the amount borrowed, which note was secured by the TD.

10.      Plaintiff financed the Property by obtaining financing from Defendants, GREENPOINT MORTGAGE FUNDING, INC. and by using COASTAL EMPIRE MORTGAGE as a broker.

11.      Defendant OCWEN LOAN SERVICING, LLC, and/or BANK OF AMERICA HOME LOANS is the current servicing company of said loan.

12.      Within One Year Past, Plaintiff learned that of numerous consumer law violations and fraud in the origination of her loan which are specifically pled herein based on a recent forensic audit of her loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: The lender on this loan is GREENPOINT MORTGAGE FUNDING, INC. and the Plaintiff hired COASTAL EMPIRE MORTGAGE as a broker to help her get the best rate and loan program available. However, GREENPOINT and COASTAL EMPIRE conspired to put Plaintiff into a high-cost loan that she did not want.  Plaintiff should have been qualified for a low cost fixed rate loan. GREENPOINT

3

paid $3,521.50 directly to COASTAL EMPIRE to "sell" the Plaintiff an expensive and dangerous loan, at a much higher rate than she qualified for.   This amount paid to COASTAL EMPIRE was never disclosed to Plaintiff.

13.   Based on a recent forensic audit of loan documents, Plaintiffs is informed and believes and based thereon alleges the following: Plaintiff paid Defendant COASTAL EMPIRE $13,008 to represent her best interests and obtain the best loan possible.  At the time of the loan application, the Plaintiff's credit scores were 712, 709, and 724 which are slightly below the highest level of credit, but well above average and considered high enough to qualify for a prime rate and term loan. Defendant GREENPOINT MORTGAGE never offered Plaintiff any other loan product that would have been more beneficial to her despite her high credit scores.  Defendants COASTAL EMPIRE and GREENPOINT MORTGAGE illegally steered Plaintiff into a high-cost adjustable rate loan when she should have been given a low cost fixed rate loan.

14.   Based on a recent forensic audit of loan documents, Plaintiffs is informed and believes and, based thereon, alleges the following:  Plaintiff told Defendant COASTAL EMPIRE that she was not working and her husband was the only person making money.  However, COASTAL EMPIRE only listed Plaintiff on the loan application and falsified Plaintiff's income and employment section on the loan application.  Defendant COASTAL EMPIRE not only falsified Plaintiff's income but also listed the amount as much higher than Plaintiff's husband's income. The Plaintiff was not aware that COASTAL EMPIRE falsified her employment or her income.

15.   Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: GREENPOINT MORTGAGE FUNDING, INC., violated its duty to verify that the broker did not defraud the Plaintiff.  GREENPOINT MORTGAGE knowingly placed the Plaintiff into an unaffordable loan without any regard to Plaintiff's financial situation.

16.    Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: GREENPOINT MORTGAGE and COSTAL EMPIRE were only concerned about the points and fees that could be generated from this loan. GREENPOINT MORTAGE engaged in predatory lending by knowingly putting borrower into a loan that Plaintiff could not afford.

17.     Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: COASTAL EMPIRE engaged in predatory lending by falsifying the Plaintiff's income on her loan application.

18.     Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: A significant discrepancy was found between the Annual Percentage Rate (APR) and total finance charges that were disclosed to Plaintiff by GREENPOINT MORTGAGE on the final truth in lending disclosure and the correct information that should have been disclosed.  The purpose of disclosing APR on the Truth in Lending documents is so the Plaintiff could have been prepared for what would happen to her loan in the future.  The most accurate way to calculate the APR must be with the maximum interest rate allowed on the loan.  Using any index value other than the maximum rate will cause the potential borrower to make a decision about the loan based on inaccurately optimistic interest rates.  Here, GREENPOINT MORTGAGE fraudulently presented as fact an APR based on the (impossible) situation that the index value would never change over the life of the loan.  The APR was deceptively and fraudulently understate by 1.460%     Plaintiff suffered significant damages because the actual rate the Plaintiff has been charged on this loan is significantly higher than the false APR quoted to her in the documents received by GREENPOINT.

19.     Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: The Federal Truth In Lending Disclosure Statements Findings show that the "Finance Charge" was deceptively and fraudulently understated by $336,072.26 and "The total of Payments" were deceptively and fraudulently understated by $337,061.88.  In addition, Plaintiff had no understanding that the amount of her monthly payment would change from $2,779.17 to $5,145.29 as the documents themselves as provided by GREENPOINT did not accurately set-forth the amount of the payments and Plaintiff was told by the representative of COSTAL EMPIRE that her payments would remain the same over the life of the loan.

20.     Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: The appraised value of the property was inflated.  Here, the seller of the property gave Plaintiff a $15,000 credit to pay for her closing costs.  The property value was inflated by approximately $15,000 and as a result GREENPOINT MORTGAGE charged more money in

origination costs and was able to receive interest on the extra money it lent Plaintiff over the life of the loan.  Plaintiff suffered because she over-paid for the property which took away from her equity and over time paid much more in closing costs because of the financing costs plus the original amount given to the GREENPOINT MORTGAGE.  In this case, the closing costs were already very high and the broker, COASTAL EMPIRE MORTGAGE received additional money from GREENPOINT MORTGAGE in the form of a Yield Spread Premium ("YSP") to sell the Plaintiff a higher rate loan than she would otherwise qualify for.  The inflated audit amount and the consequences thereof were at all time known to GREENPOINT and COSTAL but were not made known to Plaintiff.

21.     Based on a recent forensic audit of her loan documents, Plaintiff is informed and believes, and thereon alleges, the following: The Plaintiff's Debt to Income Ratio exceeds the maximum allowed DTI ratio per all usual and customary underwriting guidelines for the ALT-A and/or Sub-Prime Lending.  Here, the Plaintiff was not actually employed at the time the loan was funded.  Her husband was employed but his real income was significantly lower than the amount listed on the loan application. COASTAL EMPIRE falsified Plaintiff's income on her application and did not follow the lender's underwriting guidelines or perform a thorough analysis of Plaintiff's income.  GREENPOINT MORTGAGE knew or should have known by simply using standard industry underwriting procedures that the income was inflated and their underwriters could have used actual income but instead used stated income because they know through their underwriting experience that most subprime loan candidates, including Plaintiff, would not otherwise qualify.  GREENPOINT did not concern itself with the underwriting on this loan and with verification of income because the loan was designed for GREENPOINT to sell on the secondary market to be securitized and used as collateral for bonds and other securities sold by Wall Street investment banks to unwary investors overseas.   Thus GREENPOINT did not care if Plaintiff qualified for the loan as GREENPOINT was in the market of flipping such loans by selling them off thereby passing the risk of loss to unwary investors (suckers) down the line.  Such facts were not only known to GREENPOINT but constitute a part of their business plan and are thus practices and procedures that were commonly employed by GREENPOINT.  Such facts were material as Plaintiff believed that the loan she purchased was designed so she could finance the purchase of her home.  The true facts are that the loan was simply a piece of paper to be sold off as

6

FIRST AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

part of the frenzy that developed as the result of the international scheme, in which GREENPOINT was a major participant, to sell debt securities overseas at tremendous profit for Wall Street investment banks. Wall Street at all times relevant to this case was demanding as many loans, such as the one given Plaintiff, as possible so they could continue their profit making orgy selling securities backed by subprime mortgage debt. Mortgage companies including GREENPOINT complied in meeting that demand from Wall Street by getting as many subprime loans as possible to at the behest of the Wall Street giants so they could sell more defectively secured products to investors.

22. Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: Because the Plaintiff was put into a loan that she did not understand and with monthly payments that were completely unaffordable, she fell behind on her payments. The Plaintiff does not know who owns her mortgage and it appears that the ownership of the note has been illegally transferred. The plaintiff only found this out when MERS, an entity claiming to own or be the nominee of her note, threatened to foreclose on her property. MERS is identified in the deed of trust as the Beneficiary and "nominee for the Lender, and its successors and assigns." The deed of trust also states that the "Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender." MERS filed an ineffective Substitution of Trustee in favor of Aztec Foreclosure Corporation. Said "Substitution of Trustee" is ineffective pursuant to the Deed of Trust and Requirements of California state law. As a business entity which has admitted under penalty of perjury in court proceedings that it is not a "holder in due course" of any promissory note, does not even store or hold promissory notes, and is merely a company that tracks alleged assignments of Deeds of Trusts, and/or promissory notes (without recording said documents in the county in which the property is located), MERS lacks standing to issue and record a Substitution of Trustee pursuant to California law, as said business entity is not a "holder in due course."

23. Based on a recent forensic audit of loan documents, Plaintiff is informed and believes and, based thereon, alleges the following: MERS does not have standing to foreclose in its own name or in the name of some undisclosed entity, since it has never originated a loan, never serviced a loan, never held or owned a loan and has never extended credit. MERS does not acquire notes or the debts thereby

represented for or without consideration.  It has neither the right nor the obligation to service the debts represented by the notes and/or secured by the mortgages.  Furthermore, the principal/agent (nominee) relationship between its members and MERS is such that the "close-connectedness doctrine" prevents MERS from qualifying as a holder in due course without notice, even if it did acquire some ownership interest in the debt.

24.     Further, during the course of the loan application, the Notice of Right to Cancel in the closing packet failed to state a transaction date or the expiration date of rescission period.  Plaintiff also failed to receive two copies of the Notice of Right to Cancel thus triggering a 3 year period of rescission.

25.     Plaintiff is a Spanish speaker and the loan with GREENPOINT MORTGAGE FUNDING and COASTAL EMPIRE MORTGAGE was negotiated in Spanish.  However, the loan documents that Plaintiff was required to sign at the loan's closing were in English and were not translated in writing in Spanish.

26.     Any and all documents Plaintiff received also failed to include initial disclosure and final disclosures, which include RESPA, TILA, ECOA and FCRA disclosures.

27.     Further, in the Notice of Right to Cancel, neither the transaction date nor the expiry of rescission period are completed, and were left blank.

28.     Based on the foregoing facts, Plaintiff began having difficulty paying her mortgage.

29.     As a result, MERS claiming the status of nominee for RWPO III, LLC as Beneficiary has executed a NOTICE OF TRUSTEE'S SALE which indicates that Plaintiff's home will be sold at a foreclosure sale on or about September 17, 2009 at 10:00 AM at the South Entrance to the County Courthouse, 220 W. Broadway, San Diego, CA.

30.     On or about September 2, 2009, Kent C. Wilson, Attorney for Plaintiff, sent a Notice of Rescission of Plaintiff's loan by certified U.S. Mail, return receipt requested, to the original lender of Plaintiff's Loan, GREENPOINT MORTGAGE FUNDING INC., with a copy to the Trustee and/or Servicer, Defendant BANK OF AMERICA HOME LOANS, AZTEC FORECLOSURE CORPORATION.  Said Notice indicated that Plaintiff's loan was rescinded for violations of federal and state laws against predatory lending, but not limited to, the Federal Truth in Lending Act and California Civil Code section 1632.  Said notice further demanded that any Notice of Trustee's Sale be retracted.

8

FIRST AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

As a result of said notice, Plaintiff alleges that the TD has been cancelled and is void and that Defendant AZTEC FORECLOSURE CORPORATION and/or MERS no longer has any right to sell Plaintiff's home.

### FIRST CLAIM FOR RELIEF
### (Intentional Misrepresentation)

COMES NOW PLAINTIFF and for a separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Defendants, GREENPOINT and COSTAL EMPIRE allege as follows:

31.    Plaintiff repeats and repleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

32.    Based on Defendant GREENPOINT MORTGAGE and/or COASTAL EMPIRE MORTGAGE, failure to use Plaintiff's actual income, Plaintiff was unknowingly given a loan that Plaintiff could not afford.  At all times relevant, GREEPOINT MORTGAGE and COASTAL EMPIRE, knew that Plaintiff could not afford the loan thus they used stated income as a means to improve the Debt to Income Ratio to make it appear that the loan was in conformity with underwriting standards used in the industry.

33.    Further, Defendants GREENPOINT MORTGAGE and COASTAL EMPIRE, failed to inform Plaintiff of her right to rescind, along with failing to disclose numerous federal safeguards in the application process as outlined above and further outlined in the below.  An omission of these documents in the loan package submitted to GREENPOINT underwriters is evidence that GREENPOINT'S senior management did not require their underwriters to employ standard industry underwriting practices.  Such failure to disclose the right of rescission is a statutory violation of TILA (see Claim for Relief below).  Thus Plaintiff was in a position that she did not know what the terms of

the loan was or that she had the right to back out of the loan within 3 days after closing without any penalty. The failure to provide the cancelation notice compounded the non-disclosure failure.

34.     Defendants GREENPOINT MORTGAGE and COASTAL EMPIRE further failed to include the Initial Goof Faith Estimate or an Initial TIL within the 3 business days as required. The purpose of providing these documents was to apprise the Plaintiff of the terms an costs involving the loan and give Plaintiff the opportunity to shop for alternative financing from another lender through another mortgage broker. Additionally, the documents that GREENPOINT did provide were in and of themselves fraudulent as they misstated the APR, Finance charges, and the total payments. Such facts were material as a matter of law as they are required to be in the documents pursuant to TILA and RESPA as further set-forth below and failure to accurately state the terms of the loan made the documents in and of themselves fraudulent. In addition, culpability on the part of GREENPOINT and COSTAL EMPIRE is further enhanced by the misrepresentation that the loan was suitable, that Plaintiff qualified for the loan, that the loan was made so that Plaintiff could purchase the home instead of serving as part of a securitization scheme, that Plaintiff was overpaying on her house because of the inflated appraisal and that Plaintiff spoke only Spanish and could not possibly understand the terms of her loan.

35.     GREENPOINT MORTGAGE and COASTAL EMPIRE made the above referenced false representations knowing of their falsity and with the intent to induce Plaintiff into buying the loan and purchasing a house that she could not afford and both defendants were motivated by greed going far beyond normal profit.

36.     Said Defendants intended that Plaintiff would rely on said false representations. Such representations were made by people whose names are currently unknown to Plaintiff nor are the ascertainable as the discovery has not began in the case but for which Plaintiff will amend when the identity of such persons becomes known or as proved at time of trial. Such false representations were

10

FIRST AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

1
2

also made by the documents themselves as outlined above and were provided by GREENPOINT through the broker to induce Plaintiff into purchase of the faulty loan.

3
4

      37.      Said false representations and fraudulent concealments by Defendants were material.

5
6
7

      38.      Plaintiff reasonably relied on the above referenced false representations of said Defendants.  Plaintiff would not have entered into the loan transaction had Plaintiff known the true facts concerning the loan.

8
9
10

      39.      Plaintiff is informed and believes and thereon alleges that as a legal result of the misrepresentation of Defendants, Plaintiff has suffered severe emotional distress and other damages as a result in an amount in excess of $500,000 or to be proven at trial.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      40.      Defendants, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights.  The Conduct of GREENPOINT was part of a business plan authorized by the highest level of management and the their board to instruct their underwriters to ignore normal industry underwriting standards as it would enable GREENPOINT to make more subprime loans to resell at high profit to the securitized market.  As a result, GREENPOINT actively sought the participation of mortgage brokers who would engage in "reverse redlining" in communities where there existed a heavy concentration of Spanish speakers and paid such brokers a higher commission often characterized as the Yield Spread Premium paid outside the escrow as an extra incentive to brokers to place borrowers in unsuitable loans as they are most gullible and at the highest risk of being enticed by false representations into inappropriate loans as they do not, as was the Plaintiff in this case, understand the transaction.  Plaintiff is informed and believes that GREENPOINT has already been found to have engaged in such practices by courts as well as Federal and State regulatory bodies.  The conduct by the Defendants, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner motivated by greed and employed in a cunning manner as part of GREENPOINT'S practices and procedures to ignore

11

industry standards in loan underwriting so as to engage in the practice of "reverse redlining" which thwarts the purpose of Congress in passing the TILA so as to make unseemly profits and by taking advantage of persons such as Plaintiff with little education and no skill in using the English language all entitling Plaintiff to recover punitive damages from Defendants in an amount according to proof.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

**SECOND CLAIM FOR RELIEF**
**(Quiet Title)**

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Quiet Title against all Defendants claiming a right or interest in the subject property, allege as follows:

41.     Plaintiff repeats and repleads paragraphs 1 through 40 and incorporates the allegations by reference therein as though set forth below.

42.     Plaintiff is the owner in fee of title to property commonly known as 2053 Miller Avenue Escondido, CA 92025. The basis of Plaintiff's title is a grant deed to the property.  The Legal Description of said property is as follows:

APN: 236-333-40

LEGAL DESCRIPTION: THE NORTHEASTERLY HALF OF THE SOUTHESTERLY 264 FEET OF LOT 4 IN BLOCK 3 OF HOMELAND ACRES ADDITION TO ESCONDIDO, IN THE CITY OF ESCONDIDO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF NO. 1205, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 1, 1909.

EXCEPTING THEREFROM THE NORTHEASTERLY 241.68 FEET THEREOF.

43.     Defendant AZTEC FORECLOSURE CORPORATION as the Trustee and/or MERS as nominee for an undisclosed principal designated herein as DOE 4, claim and assert interests or threaten to conduct a trustee's foreclose sale of the above-described real property and such claimed interests and right to foreclose are adverse to Plaintiff.  The claims of defendants are based on the deeds of trust.

44.     The deeds of trust are invalid and void as to Plaintiff's property because Plaintiff is entitled to offsets against the promissory notes that are secured by the deeds of trusts, and these offsets are greater in amount than the sum that would otherwise be due under the promissory notes, and/or Plaintiff is entitled to rescission of the promissory notes and deeds of trust such that Defendant's claim to the property is released.  Additionally, each Defendant has waived tender as the result of their failure to comply with CC §§ 2923.5 and 2923.6 and tender is not required pursuant to CC § 1632.

45.     Plaintiff seeks to quiet title as of the date the complaint is filed.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

**THIRD CLAIM FOR RELIEF**
**[Accounting & Violation of 12 USCA § 2605 (e) 24 CFR § 3500]**

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Accounting against Defendant BANK OF AMERICA HOME LOANS ("BOA") and OCWEN, allege as follows:

46.     Plaintiff repeats and repleads paragraphs 1 through 40 and incorporates the allegations by reference therein as though set forth below.

47.     At all times relevant herein, payments were received by BOA and OCWEN acting as the loan servicers on the loan secured by the first deed of trust recorded against the subject Property.

48.     On or about September 2, 2009, Plaintiff, through counsel, sent a Qualified Written Request ("QWR") via certified mail to OCWEN and BOA pursuant to 12 USCA § 2605 (e) and Regulation X at 24 CFR 3500.  Such request, in summary, sought information on whether or not the loan was in lawful compliance with all federal and state laws regarding disclosure, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiff, all debits and credits to the Plaintiff's accounts, documentation of all mortgage assignments, accounting of all attorney fees, costs and foreclosure fees, and all late charges assessed to the balance of the loan, an accounting of all monies applied to suspended or forbearance accounts,  an accounting of all impounds including taxes and insurance and the fees, charges and commissions paid to all servicers of the account.

13

49.     BOA and OCWEN have a statutory duty pursuant to RESPA [12 USCA § 2605 (e) and Regulation X at 24 CFR 3500] to provide information requested by such requests.  Despite such duty BOA and OCWEN did not respond.  As a result, Plaintiffs do not have the requested information including the current party claiming a beneficial interest in the note, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiffs, all debits and credits to the Plaintiff's accounts, documentation of all mortgage assignments and an accounting of all attorney fees, costs.

50.     As a result of the above, Plaintiffs request the court to order an accounting of all monies received and expenditures made involving the loan account and to provide the identity of any party now claiming a beneficial interest in the note so Plaintiff can determine if there is in fact any monies due under the note, if any amounts are actually due on the note which may have been paid-off by insurance or by government program and if the proper parties are named in the lawsuit and if there exists a current underlying obligation secured by the deed of trust recorded against her home that can be used as the bases for a trustee's sale of the Property under the deed of trust.  Plaintiff is informed and believes that the note may have already been paid by a third party either through a government program or through private mortgage or other counter party insurance.  As a result such information is necessary to determine if the security deed of trust was a valid lien against the Property and whether or not the foreclosure and potential loss of the home by way of a trustee's sale through the non judicial foreclosure process is proper.

51.     An accounting is necessary to determine if monies are owed to Plaintiffs by way of set-off to the balance of the mortgage or any future claim to damages claimed by the beneficiary of the note and the identify of each party that claims to have a beneficial interest in the note.  All such information is known only to or can only be ascertained by BOA and OCWEN.  Plaintiffs have no other means to determine if a balance is owed to them and the proper parties to be joined to this lawsuit.

52.     As a result of the failure to respond fully respond by providing the requested documents Plaintiff is entitled to actual damages in an amount to be proved as well as statutory damages

and attorney fees as Plaintiffs are informed and believe that BOA and OCWEN have engaged in a pattern and practice of not responding to borrower inquires especially as they relate to the identity of the note holders.  Such lack of response is used as a method of shielding the beneficiary of deeds of trust from the necessity of proving the existence of a valid underlying obligation so that BOA or OCWEN can foreclose against persons, including Plaintiff and to collect payments that are not actually due.  The amount of money due, if any, from Plaintiff to BOA and OCWEN is unknown to Plaintiff and cannot be determined without an accounting.  In addition, the party claiming to be a holder in due course of the promissory note signed by Plaintiff is currently unknown and is a necessary or proper party to the lawsuit.

### FOURTH CLAIM FOR RELIEF
**(Violations of TILA)**

COMES NOW PLAINTIFF, and for a separate and distinct Claim for Relief for Violation of TILA against Defendants GREENPOINT and COASTAL EMPIRE MORTGAGE, allege as follows:

53.      Plaintiff is informed and believes, and thereon alleges, that each Defendant, in concert with their agents, have engaged in acts or practices in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, as amended, and TILA's implementing Regulation Z, 12 C.F.R. §226, as amended.

54.      The terms "amount finance," "annual percentage rate," "closed-end credit," "consumer," "consumer credit," "consummation," "credit," "creditor," "dwelling," "finance charge," "mortgage," "open-end credit," "payment schedule," "points and fees," "residential mortgage transaction," "reverse mortgage transaction," "security interest," and "total of payments" are defined as set forth in Sections 103 and 128 of TILA, 15 U.S.C. §§ 1602 and 1638, and Sections 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33 of Regulation Z, 12 C.F.C. §§ 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33.

55.      The term "Regulation Z" means the regulation of the FRB promulgated to implement TILA and HOEPA, 12 C.F.R. 226, as amended.  The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp.1, as amended.

56.     The term "TILA" means the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j, as amended.  TILA, which took effect on July 1, 1969, is intended to promote the informed use of consumer credit by requiring creditors to disclose credit terms and costs, requiring additional disclosures for loans secured by consumers' homes, and permitting consumers to rescind certain transactions that involve their principal dwellings.

57.     Plaintiff is informed and believe, and thereon allege, that each Defendant is a "creditor," as that term is defined in Section 103(f) of TILA, 15 U.S.C. § 1602(f), and Section 226.2(a)(17) of Regulation Z, 12 C.F.R. § 226.2(1)(17), and therefore is required to comply with applicable provisions of TILA, HOEPA, and Regulation Z.  The loan defendant made to Plaintiffs in this action is a mortgage loan covered by TILA and Regulation Z.

58.     Plaintiff is informed and believes within one year past, and thereon alleges, that in the course and conduct of offering and making the TILA mortgage loan to Plaintiffs, each Defendant violated the requirements of TILA and Regulation Z by failing to make required disclosures in the following respects by:

(a)     failing to disclose in writing two copies of the right of rescission three days prior to closing in violation of 12 C.F.R. § 226.23 (a), (f);

(b)     failing to make written disclosures of the amount being financed and an itemization of the amount financed and the final amount financed in violation of  C.F.R. § 226.18 (d) (1) Regulation Z, 12 C.F.R. § 226.31(b) and (C)(1) as set forth above.

59.     Plaintiffs are additionally informed and believe, and thereon allege, that in the course and conduct of offering and making the mortgage loan to Plaintiffs, each Defendant violated the requirements of Regulation Z prohibiting asset-based lending, by engaging in a pattern or practice of extending such credit to Plaintiffs, based on Plaintiffs' collateral rather than considering Plaintiffs' current and expected income, current obligations, and employment status to determine whether the consumer is able to make the scheduled payments to repay the obligation, in violation of Section 129(h) of TILA, 15 U.S.C. § 1639(h), and Section 226.32(e)(1) of Regulation Z, 12 C.F.R. § 226.32(e)(1).

60.     Plaintiff has suffered, and will continue to suffer as the legal result, substantial injury as a result of each Defendants' violations of TILA, as set forth above.

61.     Plaintiff is informed and believes, and thereon alleges, that as a result of the conduct of Defendants, Plaintiffs are entitled to certain amounts already paid, including interest, finance charges and closing costs, as an offset against amounts owing on the loan, and collect statutory damages and attorney fees as well.

ALL FOR WHICH PLAINTIFFS SEEK DAMAGES AND OTHER RELIEF AS PRAYED.

**SIXTH CLAIM FOR RELIEF**
**(Violation of RESPA)**

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Violation of RESPA against Defendants GREENPOINT and COSTAL EMPIRE MORTGAGE, allege as follows:

62.     Plaintiff repeats and repleads paragraphs 1 through 61 and incorporates the allegations by reference therein as though set forth below.

63.     In creating the loan Defendants have engaged in acts or practices in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.A § 2601 et seq.

64.     The terms "federally related mortgage loan," "creditor," "thing of value," "settlement services," "title insurance company," "person," "Secretary," "affiliated business arrangement," and "associate" are defined as set forth in 12 U.S.C.A. § 2602.

65.     The term "RESPA loan" means any loan (other than temporary financing such as a construction loan) which is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government, or is made in whole or in

part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation; or is made in whole or in part by any "creditor", as defined in <u>section 1602(f) of Title 15</u>, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.  12 U.S.C.A. § 2602 (A) & (B) (i)(ii)(iii)(iv).

66.     Plaintiff is informed and believes, and thereon alleges, that in the course and conduct of offering and making the RESPA mortgage loan to Plaintiff, defendant GREENPOINT MORTGAGE and/or COASTAL EMPIRE violated the requirements of RESPA by failing to do the following:

(a)     Initial Good Faith Estimate;

(b)     Final Good Faith Estimate:

(c)     Notice of Assignment, Sale or Transfer of Servicing Rights;

(d)     Escrow Account Disclosure

67.     Plaintiff is informed and believes, and thereon allege, that in the course and conduct of offering and making the RESPA mortgage loan to Plaintiff, defendants violated the requirements of RESPA, 12 U.S.C.A. § 2607 by partaking in the following:

(a)     providing a person with a fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b)     providing a fee portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

68.     Plaintiff is informed  and believes, and thereon alleges, that in the course and conduct of offering and making the RESPA mortgage loan to Plaintiff, defendants violated the requirements of RESPA, 12 U.S.C.A. § 2608 by partaking in the following:

(a)   requiring, directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company.

69.   Plaintiff is informed and believes, and thereon alleges, that as a result of the conduct of defendants, Plaintiff is entitled to rescind the loan transaction, recover certain amounts already paid, including interest, finance charges and closing costs, offset these damages against amounts owing on the loan, and collect statutory damages and attorney fees.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## SEVENTH CLAIM FOR RELIEF

### (Violation of California Business and Professions Code § 17200 et seq.)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Violation of California Business and Professions Code against Defendants GREENPOINT and COSTAL EMPIRE MORTGAGE, allege as follows:

70.   Plaintiff repeats and repleads paragraphs 1 through 69 and incorporates the allegations by reference therein as though set forth below.

71.   Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the Defendants sued herein was the agent and/or employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and employment.

72.   Plaintiff are informed and believe and thereon allege that, by reason of Defendants' fraudulent, deceptive, unfair and other wrongful conduct as herein alleged, said Defendants have violated California Business and Professions Code § 17200 et seq. by consummating an unlawful, unfair and fraudulent business practice, designed to deprive Plaintiff of their equity in said property.

73.   By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is, as yet, unascertained.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## EIGHTH CLAIM FOR RELIEF
### (Violation of California Civil Code § 2923.6)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Violation of California Civil Code § 2923.6 against Defendants, BOC and OCWEN allege as follows:

74.    Plaintiff repeats and repleads paragraphs 1 through 73 and incorporates the allegations by reference therein as though set forth below.

75.    Plaintiff is informed and believes, and thereon alleges, that at no time during the course of the foreclosure process, nor anytime leading up thereto, was an attempt at a loan modification made by Defendants.

76.    Defendant OCWEN and/or BANK OF AMERICA HOME LOANS, as a servicer under a pooling and servicing agreement, were required to implement a loan modification plan if said loan was in payment default or default was reasonably foreseeable and where anticipated recovery under the modification exceeds the anticipated recovery through foreclosure.

77.    As described hereinabove, Plaintiff was unable to make said loan payments as were initially required, but were able to make payments under a modified payment plan, thus allowing them to retain their home and providing the Defendants with a higher recovery than through the foreclosure process.

78.    Based on the foregoing, Plaintiff is entitled to reasonable attorney's fees and costs as the prevailing party under the loan agreement and as the legal result of such violation, Defendants waived their right to tender by this Plaintiff in response to any demand for rescission.

.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

**NINTH CLAIM FOR RELIEF**
**(Violation of California Civil Code § 2923.5)**

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Violation of California Civil Code § 2923.5 against Defendants, allege as follows:

79.    Plaintiff repeats and repleads paragraphs 1 through 78 and incorporates the allegations by reference therein as though set forth below.

80.     Plaintiff is informed and believes and thereon alleges that Defendants failed to assess the Plaintiff's financial situation and explore options for Plaintiff to avoid foreclosure, thirty (30) days prior to filing the Default.

81.     Defendants are required to refrain from filing a Default and proceeding with the foreclosure process until after thirty (30) days has passed from the time they attempted to assess the financial situation of the Plaintiff and attempt a "work out" plan.

82.     Further, Defendants were required to reasonably describe any and all due diligence they took in efforts to contact the Plaintiff thirty (30) days before filing the Default.

83.     As evidenced in the facts hereinabove, Plaintiff's mortgage was procured between January 1, 2003 and December 31, 2007 and is an owner-occupied residence and thus the principal residence of the borrower.

84.     Plaintiff is informed and believe, and thereon allege, that as a result of the conduct of defendants, Plaintiff is entitled to rescind the loan transaction, recover certain amounts already paid, including interest, finance charges and closing costs, offset these damages against amounts owing on the loan, and collect statutory damages and attorney fees.

85.     Based on the foregoing, Plaintiff is entitled to reasonable attorney's fees and costs as the prevailing party under the loan agreement and as the legal result of such violation, Defendants waived their right to tender by this Plaintiff in response to any demand for rescission.

ALL FOR WHICH PLAINTIFF PRAYS AS SET-FORTH BELOW

**TENTH CLAIM FOR RELIEF**
**(Violation of California Civil Code § 1632)**

COMES NOW PLAINITFF, and for a separate and distinct CLAIM FOR RELIEF for Violation of California Civil Code § 1632 against Defendants, OCWEN, BOA and DOE 4, the purported holder of the note, allege as follows:

86.     Plaintiff repeats and repleads paragraph 1 through 85 and incorporate the allegations by reference therein as though set forth below.

87.      Plaintiff is informed and believes and thereon alleges that Defendants engage in a trade or business as described in CC § 1632 and negotiate contracts primarily in Spanish, either orally or in writing a, and are required to provide said contracts to be translated into Spanish.

88.      Plaintiff's primary language is Spanish and during the course of the loan negotiation no pertinent documents were provided in Spanish.

89.      Based on the foregoing violations, Plaintiff is entitled to rescind their contract with Defendants.  There is no time limit or requirement for tender pursuant to this statute.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

**On the First Claim for Relief for Intentional Misrepresentation:**

1.  Compensatory damages in an amount in excess of $500,000, or to be proven at trial;

2.  General damages in an amount in excess of $500,000, or to be proven at trial;

3.  Punitive damages in an amount to be proven at trial;

**On the Second Claim for Relief for Breach of Fiduciary Duty:**

1.  Compensatory damages in an amount in excess of $500,000, or to be proven at trial;

2.  General damages in an amount in excess of $500,000, or to be proven at trial;

3.  Punitive damages in an amount to be proven at trial;

**On the Third Claim for Relief for Quiet Title:**

1.  Judgment that Plaintiff is the owner in fee simple of the properties and that defendants have no interest in the properties adverse to Plaintiff;

**On the Fourth Claim for Relief for an Accounting:**

1.  The court render an accounting between the parties, determining the amount, if any, actually due and owing from Plaintiff.

**On the Eifth Claim for Relief for Violations of TILA:**

1.  Rescission;

2.  Damages;

3.  Offset of amounts owing;

**On the Sixth Claim for Relief for Violations of RESPA:**

1.  Rescission;

2.  Damages;

3.  Offset of amounts owing;

**On the Seventh Claim for Relief for Violation of CA Bus & Prof Code §17200 et seq.:**

1.  General damages in an amount to be proven at trial;

2.  Special damages in an amount to be proven at trial;

**On the Eighth Claim for Relief for Violation of CA Civil Code § 2923.6:**

1.  General damages in an amount to be proven at trial;

2.  Special damages in an amount to be proven at trial;

**On the Ninth Claim for Relief for Violation of CA Civil Code § 2923.5:**

1.  General damages in an amount to be proven at trial;

2.  Special damages in an amount to be proven at trial;

3.  Rescission;

**On the Tenth Claim for Relief for Violation of CC § 1632**

1.  Rescission of the loan.

**On all Claims for Relief:**

1.  Costs of suit;

2.  Attorneys fees; and

3.  Such other relief as the court deems just and proper.

1

2    DATED: December 17, 2009                          KENT C. WILSON

3

4                                      By:/s/ Kent C. Wilson___

5                                         Kent C. Wilson
                                          Attorney for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

# VERIFICATION

     I am a Plaintiff in the above entitled action or proceeding.  I am a Spanish speaker.  The contents of the Complaint have been read to me by a person I trust to translate English into Spanish and Spanish into English.  I know the contents of the foregoing document(s) "Second Amended Complaint" is true of my own knowledge except as to those matters which are stated upon my information and belief and as to those matters I believe to be true.  This verification was signed in the City of San Marcos.

DATED: _12/17/_ , 2009

_Lourdes m. Sanchez_
LOURDES SANCHEZ

1

VERIFICATION

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
LOURDES SANCHEZ v. GREENPOINT MORTGAGE FUNDING, et al.

# **PROOF OF SERVICE BY MAIL**

I declare that I am a citizen of the United States and reside in City of San Diego, State of California.  I am over the age of 18 years and not a party to the within case or proceeding.  My business address is 943 Imperial Avenue, Suite "G," Calexico, CA 92231 and ONE AMERICA PLAZA, 600 W. Broadway, 7th floor, San Diego, CA 92101.

On December 18, 2009, I served a true and correct copy of the within document entitled: "FIRST AMENDED COMPLAINT" on the parties and/or their attorneys of record, by causing the above said Notice to filed electronically with the Clerk of Court and served electronically through the CM/ECF system on all parties of record.

I certify and declare the above to be true under penalty of perjury and that this proof of service is dated December 18, 2009, at San Diego, California.

By: /S/ Kent C. Wilson_
Kent C. Wilson
Attorney At Law