Kent C. Wilson, Esq. CSB#058652
943 Imperial Avenue,
Suite "G"
Calexico, CA  92231
(760) 357-1193
(619) 923-2677 e-fax.

Attorney for Plaintiff
LOURDES SANCHEZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOURDES SANCHEZ, an individual, | Case No. 09 CV 2005 JM WMC |
| Plaintiffs, | SECOND AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF |
| v. | |
| GREENPOINT MORTGAGE FUNDING, INC., BANK OF AMERICA HOME LOANS, AZTEC FORECLOSURE CORPORATION, OCWEN LOAN SERVICING, LLC., COASTAL EMPIRE MORTGAGE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for RWPO III, LLC as beneficiary and DOES 1-20, | 1. Intentional Misrepresentation 2. Fraudulent Concealment 3. Breach of Fiduciary Duty 4. Constructive Fraud 5. Violation of REPSA (12 U.S.C. § 2605) 6. Violations of TILA 7. Violation of RESPA (12 U.S.C. § 2607) 8. Quiet Title |
| Defendants. | **DEMAND FOR JURY** |

COMES NOW PLAINTIFF, LOURDES SANCHEZ, an individual, who alleges damages and seeks equitable relief against the Defendants, and each of them, as follows:

## JURISDICTION & VENUE

1.      Jurisdiction is conferred upon the court pursuant to Title 28, § 1331 as there is a federal question and the lawsuit is based on various federal statutes.  Plaintiff

rely on federal statutes 15 U.S.C.A. § 1691 et seq., 15 U.S.C.A. § 1601 et seq., 12 U.S.C.A. § 2601 et seq., and 15 U.S.C.A. § 1681, et seq. on which to base her claims. Venue is conferred as the property is located and all transactions took place and all parties reside within San Diego County, California, which is within the boundary of the United States District Court for the Southern District of California.

## PRELIMINARY ALLEGATIONS

2.      At all times relevant herein, Plaintiff LOURDES SANCHEZ was the owner of a single family residence in San Diego whose address is 2053 Miller Avenue, Escondido CA 92025 and was the borrower on the First Deed of Trust and Second Deed of Trust at issue in this Second Amended Complaint.

3.      At all times relevant herein, Plaintiff is informed and believes that Defendants GREENPOINT MORTGAGE FUNDING, INC. ("Greenpoint"), OCWEN LOAN SERVICING, LLC ("Ocwen"), AZTEC FORECLOSURE CORPORATION (hereinafter "Aztec"), COASTAL EMPIRE MORTGAGE (hereinafter "Coastal"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") as nominee for RWPO III, LLC ("RWPO III, LLC" or as "DOE 4") as Beneficiary is or was acting in some capacity of current Trustee or as a nominee of the TD that is the subject of this complaint.

4.      At all times relevant herein, Plaintiff is informed and believes and thereon alleges that, DOES 1 through 20, inclusive, true names, identities and capacities, whether individual, corporation, association, partnership or otherwise are at this time unknown to Plaintiff who therefore sues said Defendants by such fictitious names and will so amend the complaint to show the true names and capacities of such Doe Defendant(s) when the same are ascertained.

5.      At all times relevant herein, Defendants are sued and were acting as principal(s), employer(s) and/or the agent(s), servant(s) and employee(s) of said principal(s) or employer(s), and all of the acts performed by them, or their agents, servants and employees, were performed with the knowledge and under the control of

said principal(s) or employer(s) and all such acts performed by such agents, servants and/or employers, were performed within the course and scope of their authority.

## STATEMENT OF FACTS

6.      On or about July 12, 2007, Plaintiff purchased a single-family home located at 2053 Miller Avenue, Escondido CA 92025 ("Property") by borrowing $460,000 secured by a First Deed of Trust from Defendant Greenpoint, the funding lender through Defendant Coastal, who served as the mortgage broker. In addition to the First Deed of Trust, Plaintiff got a concurrent second mortgage for the amount of $86,200, which was secured by a Second Deed of Trust.  On or about that date, Plaintiff executed promissory notes for the amount borrowed, which notes were secured by the First Deed of Trust and the Second Deed of Trust.

7.      Defendant OCWEN was the servicer on the First Deed of Trust.

8.      Plaintiff contacted Defendant Coastal to assist her in getting the best loan possible.

9.      Defendant Coastal made an arrangement for Defendant Greenpoint to fund both mortgage loans.  On June 27, 2007, the Plaintiff initially applied for the loans to purchase the Property.

10.     Defendants Greenpoint and Coastal conspired to put the Plaintiff into a high-cost loan that she did not want. Defendant Greenpoint paid an illegal yield spread premium of $2,875.50 to Coastal to sell the Plaintiff an expensive and dangerous loan with a substantial risk of default.  This kickback paid to Coastal was never disclosed to Plaintiff.

11.     Plaintiff paid Defendant Coastal $13,008 to represent her best interests and obtain the best loan possible.  At the time of the loan application, the Plaintiff's credit scores were 712, 709, and 724, which are slightly below the highest level of credit, but well above average and considered high enough to qualify for a prime rate and term loan. Defendants Coastal and Greenpoint never offered Plaintiff any other loan product that would have been more beneficial to her despite her high credit scores.  Defendants

3

Coastal and Greenpoint illegally steered Plaintiff into a high-cost adjustable rate loan when she should have been given a low cost fixed rate loan.

12.     Plaintiff told Defendant Coastal that she was not working and her husband was the only person making money for the married couple.  However, without Plaintiff's consent or knowledge,  Defendant Coastal, with Defendant Greenpoint's consent and/or constructive knowledge, only listed Plaintiff as the borrower on the loan application and falsified Plaintiff's income and employment section on the loan application.  Defendant Coastal not only falsified Plaintiff's income but also listed the amount as much higher than Plaintiff's husband's income at approximately $17,000.00 a month. The Plaintiff was not aware that Coastal falsified her employment or her income in the underwriting process.

13.     Defendant Greenpoint fraudulently misrepresented that the Plaintiff was qualified for the mortgage. On the loan application, the loan was underwritten using the lowest possible payment on the loan as part of the expense information.  To be properly qualified for the loan pursuant to proper mortgage underwriting standards, the highest possible payment on the loan should have been used as part of the expense information. By using the improper expense information as part of the loan application as filled out initially by Defendant Coastal, Defendant Greenpoint knowingly qualified the Plaintiff for the mortgage even though from the face on the loan application it was clear to Defendant Greenpoint that the loan was not being underwritten properly.  Despite its failure to comply with mortgage underwriting standards, Defendant Greenpoint, through the paperwork and loan documents produced by Defendant Greenpoint, falsely represented to the Plaintiff that she was qualified for the loans when she was in fact not qualified for the loans.   These documents were provided to the Plaintiff through Defendant Coastal on the closing of the loan on or about July 12, 2007.

14.     For the First Deed of Trust, Defendant Greenpoint qualified the Plaintiff for the mortgage with a Debt to Income  (hereinafter "DTI") ratio of 47.46% based on the information that placed on the Plaintiff's loan application without her consent.

According to proper underwriting standards, the allowable DTI ratio for a mortgage loan is approximately 35%.  Therefore, even if Greenpoint had no knowledge of Defendant Coastal's manipulating of the Plaintiff's loan documents, Greenpoint improperly the Plaintiff for the mortgage loans and still fraudulently misrepresented to the Plaintiff that she was qualified for the mortgage.

15.     During the loan application process, Defendant Greenpoint produced a false Truth in Lending Act statement (hereinafter "TILA").  On the false TILA statement, the Annual Percentage Rate (hereinafter "APR") was understated by 1.46%.  The disclosed APR was 7.663% when the true APR properly calculated was 9.123%.  In addition, the finance charge was also understated by $336,072.29.  The disclosed finance charge was $787,190.38 when the true finance charge was $1,123,262.67.  These misrepresentations made the loan appear cheaper than it actually was and the Plaintiff would not have signed the loan documents if she knew the true cost of the mortgage.

16.     Defendants Greenpoint and Coastal were only concerned about the points and fees that could be generated from these loans. Defendants Greenpoint and Coastal engaged in predatory lending by knowingly putting borrower into a loan that Plaintiff could not afford.

17.     In addition, Plaintiff had no understanding that the amount of her monthly payment would change from $2,779.17 to $5,145.29 as the documents themselves as provided by Defendant Greenpoint did not accurately set-forth the amount of the payments and Plaintiff was told by the representative of Coastal that her payments would remain the same over the life of the loan.

18.     The appraised value of the property was inflated.  Here, the seller of the property gave Plaintiff a $15,000 credit to pay for her closing costs.  The property value was inflated by approximately $15,000 and as a result Greenpoint charged more money in origination costs and was able to receive interest on the extra money it lent Plaintiff over the life of the loan.  Plaintiff suffered because she over-paid for the property, which took away from her equity and over time paid much more in closing costs because of the

5

SECOND AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

financing costs plus the original amount given to the Greenpoint.  In this case, the closing costs were already very high and the broker, Coastal received additional money from Greenpoint in the form of a Yield Spread Premium ("YSP") to sell the Plaintiff a higher rate loan than she would otherwise qualify for.  The inflated audit amount and the consequences thereof were at all time known to Greenpoint and Coastal but were not made known to Plaintiff.

19.    Based on review of the Plaintiff's loan documents on or about July 22, 2009, Tthe Plaintiff's Debt to Income Ratio exceeded the maximum allowed DTI ratio per all usual and customary underwriting guidelines for the ALT-A and/or Sub-Prime Lending.  Here, the Plaintiff was not actually employed at the time the loan was funded.  Her husband was employed but his real income was significantly lower than the amount listed on the loan application.  Coastal falsified Plaintiff's income on her application and did not follow the lender's underwriting guidelines or perform a thorough analysis of Plaintiff's income.  Greenpoint knew or should have known by simply using standard industry underwriting procedures that the income was inflated and their underwriters could have used actual income but instead used stated income because they know through their underwriting experience that most subprime loan candidates, including Plaintiff, would not otherwise qualify.  Greenpoint did not concern itself with the underwriting on this loan and with verification of income because the loan was designed for Greenpoint to sell on the secondary market to be securitized and used as collateral for bonds and other securities sold by Wall Street investment banks to unwary investors.  Thus Greenpoint did not care if Plaintiff qualified for the loan as Greenpoint was in the market of flipping such loans by selling them off thereby passing the risk of loss to unwary investors down the line.  Such facts were not only known to Greenpoint but constitute a part of their business plan and are thus practices and procedures that were commonly employed by Greenpoint.  Such facts were material as Plaintiff believed that the loan she purchased was designed so she could finance the purchase of her home.  The true facts are that the loan was simply a piece of paper to be sold off as part of the frenzy that developed as the

result of the international scheme, in which Greenpoint was a major participant, to sell debt securities overseas at tremendous profit for Wall Street investment banks. Wall Street at all times relevant to this case was demanding as many loans, such as the one given Plaintiff, as possible so they could continue their profit making by selling securities backed by subprime mortgage debt. Mortgage companies including Greenpoint complied in meeting that demand from Wall Street by getting as many subprime loans as possible to at the behest of the Wall Street giants so they could sell more defectively secured products to investors.

20.     Because the Plaintiff was put into a loan that she did not understand and with monthly payments that were completely unaffordable, she fell behind on her payments. The Plaintiff did not know who owned her mortgage prior to the foreclosure and it appears that the ownership of the note has been illegally transferred. The Plaintiff only found this out when MERS, an entity claiming to own or be the nominee of her note, threatened to foreclose on her property. MERS is identified in the deed of trust as the Beneficiary and "nominee for the Lender, and its successors and assigns." The deed of trust also states that the "Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender." MERS filed an ineffective Substitution of Trustee in favor of Aztec Foreclosure Corporation. Said "Substitution of Trustee" is ineffective pursuant to the Deed of Trust and Requirements of California state law. As a business entity which has admitted under penalty of perjury in court proceedings that it is not a "holder in due course" of any promissory note, does not even store or hold promissory notes, and is merely a company that tracks alleged assignments of Deeds of Trusts, and/or promissory notes (without recording said documents in the county in which the property is located), MERS lacks standing to issue and record a Substitution of Trustee pursuant to California law, as said business entity is not a "holder in due course."

21.     MERS does not have standing to foreclose in its own name or in the name of some undisclosed entity, since it has never originated a loan, never serviced a

loan, never held or owned a loan and has never extended credit.  MERS does not acquire notes or the debts thereby represented for or without consideration.  It has neither the right nor the obligation to service the debts represented by the notes and/or secured by the mortgages.  Furthermore, the principal/agent (nominee) relationship between its members and MERS is such that the "close-connectedness doctrine" prevents MERS from qualifying as a holder in due course without notice, even if it did acquire some ownership interest in the debt.

22.     Any and all documents Plaintiff received also failed to include initial disclosure and final disclosures, which including disclosures required under RESPA and TILA.

23.     As a result, Plaintiff's home was sold at a Trustee's sale to the RWPO III on or about September 22, 2009, despite improper foreclosure proceedings being followed.

24.     On or about September 2, 2009, Kent C. Wilson, Attorney for Plaintiff, sent a Notice of Rescission of Plaintiff's loan by certified U.S. Mail, return receipt requested, to the original lender of Plaintiff's Loan, Greenpoint, with a copy to the Trustee Aztec.  Said Notice indicated that Plaintiff's loan was rescinded for violations of federal and state laws against predatory lending in the California Civil Code.  Said notice further demanded that any Notice of Trustee's Sale be retracted.  As a result of said notice, Plaintiff alleges that the TD has been cancelled and is void and that Defendant AZTEC FORECLOSURE CORPORATION and/or MERS no longer had no right to sell Plaintiff's home.

### FIRST CLAIM FOR RELIEF
**(Intentional Misrepresentation)**

COMES NOW PLAINTIFF and for a separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Defendant Greenpoint and Coastal, alleges as follows:

25.     Plaintiff repeats and repleads paragraphs 1 through 24 and incorporates the allegations by reference as though fully set-forth herein.

26.     Based on Defendants' Greenpoint and Coastal failure to use Plaintiff's actual income, Plaintiff was unknowingly given a loan that Plaintiff could not afford.  At all times relevant, Greenpoint and Coastal, knew that Plaintiff could not afford the loan thus they used stated income as a means to improve the Debt to Income Ratio to make it appear that the loan was in conformity with underwriting standards used in the industry.

27.     Further, Defendants Greenpoint and Coastal failed to properly inform Plaintiff of her right to rescind, along with failing to disclose numerous federal safeguards in the application process as outlined above and further outlined in the below. An omission of these documents in the loan package submitted to Greenpoint's underwriters is evidence that Greenpoint's senior management did not require their underwriters to employ standard industry underwriting practices.  Such failure to disclose the right of rescission is a statutory violation of TILA (see Claim for Relief below).  Thus Plaintiff was in a position that she did not know what the terms of the loan was.

28.     Defendants Greenpoint and Coastal further failed to include an accurate Initial Goof Faith Estimate or an accurate Initial TIL within the 3 business days as required.  The purpose of providing these documents was to apprise the Plaintiff of the terms and costs involving the loan and give Plaintiff the opportunity to shop for alternative financing from another lender through another mortgage broker. Additionally, the documents that Greenpoint did provide were in and of themselves

9

SECOND AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

fraudulent as they misstated the APR, Finance charges, and the total payments.  Such facts were material as a matter of law as they are required to be in the documents pursuant to TILA and RESPA as further set-forth below and failure to accurately state the terms of the loan made the documents in and of themselves fraudulent.  In addition, culpability on the part of Greenpoint and Coastal is further enhanced by the misrepresentation that the loan was suitable, that Plaintiff qualified for the loan, that the loan was made so that Plaintiff could purchase the home instead of serving as part of a securitization scheme, that Plaintiff was overpaying on her house because of the inflated appraisal and that Plaintiff spoke only Spanish and could not possibly understand the terms of her loan.

29.     Greenpoint and Coastal made the above referenced false representations knowing of their falsity and with the intent to induce Plaintiff into buying the loans and purchasing a house that she could not afford and Defendants Greenpoint and Coastal were motivated by greed going far beyond normal profit.

30.     Defendants Greenpoint and Coastal intended that Plaintiff would rely on said false representations.  Defendant Greenpoint created documentation containing fraudulently misrepresentations discussed above and below along with material omissions.  This documentation was given to the Plaintiff at the closing of the loan, which was provided to the Plaintiff through Defendant Coastal on or about July 12, 2007. The false representations were made in the documents themselves created by Defendant Greenpoint.   With knowledge of these misrepresentations, Defendant Coastal still

provided the documents to the Plaintiff and advised the Plaintiff to sign the loan documents.

31.     Said false representations and fraudulent concealments by Defendants Greenpoint and Coastal were material.

32.     Plaintiff reasonably relied on the above referenced false representations of Defendants Greenpoint and Coastal.  Plaintiff would not have entered into the loan transactions had Plaintiff known the true facts concerning the loans.

33.     Plaintiff is informed and believes and thereon alleges that as a legal result of the misrepresentation of Defendants Greenpoint and Coastal, Plaintiff has suffered severe emotional distress and other damages as a result in an amount in excess of $500,000 or to be proven at trial.

34.     Defendants Greenpoint and Coastal committed the acts herein alleged maliciously, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights.  The conduct of Greenpoint was part of a business plan authorized by the highest level of management and the their board to instruct their underwriters to ignore normal industry underwriting standards as it would enable Greenpoint to make more subprime loans to resell at high profit to the securitized market.  As a result, Greenpoint actively sought the participation of mortgage brokers who would engage in "reverse redlining" in communities where there existed a heavy concentration of Spanish speakers and paid such brokers a higher commission often characterized as the Yield Spread Premium paid outside the escrow as an extra incentive to brokers to place borrowers in unsuitable loans

as they are at the highest risk of being enticed by false representations into inappropriate loans as they do not, as was the Plaintiff in this case, understand the transaction.  Plaintiff is informed and believes that Greenpoint has already been found to have engaged in such practices by courts as well as federal and state regulatory bodies.  The conduct by the Defendants Greenpoint and Coastal amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner motivated by greed and employed in a cunning manner as part of Greenpoint's practices and procedures to ignore industry standards in loan underwriting so as to engage in the practice of "reverse redlining" which thwarts the purpose of Congress in passing the TILA so as to make unseemly profits and by taking advantage of persons such as Plaintiff with little education and no skill in using the English language entitling Plaintiff to recover punitive damages from Defendants Greenpoint and Coastal in an amount according to proof.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## SECOND CLAIM FOR RELIEF

(Fraudulent Concealment)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for fraudulent concealment against Defendants Greenpoint and Coastal, alleges as follows:

35.     Plaintiff repeats and re-alleges paragraphs 1 through 34 and incorporates the allegations by reference herein as through fully set forth.

36.     Defendants Greenpoint and Coastal fraudulently concealed the true cost of the loan by providing false Truth in Lending documents and statements.

37.     Defendants Greenpoint and Coastal failed to provide disclosures required by federal and state law, including disclosures required under RESPA and TILA.

38.     Defendant Greenpoint had a legal duty under federal and state law to make these aforementioned disclosures to the Plaintiff.

39.     Defendant Coastal had a fiduciary duty and legal duty under federal and state law to make these aforementioned disclosures to the Plaintiff.

40.     Defendants Greenpoint and Coastal intended the Plaintiff to rely upon the concealments because it produced the false documents and omitted disclosures required under federal and state law and Defendants Greenpoint and Coastal had knowledge the falsity of material omissions.

41.     The Plaintiff had justifiable reliance upon the documents and omissions by Defendants Greenpoint and Coastal as the Plaintiff could reasonably rely on the expected lending expertise held by Defendants Greenpoint and Coastal.

42.     Plaintiff has suffered economic damages in excess of $500,000.00, or in an amount to be proven at trial, as a result from the fraudulent concealments by Defendants Greenpoint and Coastal.

43.     Further, Plaintiff is informed and believes and, based thereon, alleges that as a legal result of said fraudulent concealments by Defendants Greenpoint and Coastal, Plaintiff has suffered general damages, including severe emotional distress, in an amount exceeding $500,000.00, or to be proven at trial.

44.     Defendants Greenpoint and Coastal committed the acts herein alleged maliciously, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights.  The conduct of Defendant Greenpoint was part of a business plan authorized by the highest level of management and their board to instruct their underwriters to ignore normal industry underwriting standards as it would enable Defendant Greenpoint to make more subprime loans to resell at high profit to the securitized market while Defendant Coastal would obtain unlawful yield spread premiums to sell their clients into bad loans. The conduct by Defendants Greenpoint and Coastal amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner motivated by greed

and employed in a cunning manner as part of Defendant Greenpoint's practices and procedures to ignore industry standards in loan underwriting so which thwarts the purpose of Congress in passing the TILA so as to make unseemly profits and by taking advantage of persons such as the Plaintiff, thereby entitling the Plaintiff to recover punitive damages from Defendants Greenpoint and Coastal, in an amount according to proof.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

### THIRD CLAIM FOR RELIEF

### (**Breach of Fiduciary Duty**)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for breach of fiduciary duty against Defendant Coastal, alleges as follows:

45.     Plaintiff repeats and re-alleges paragraphs 1 through 44 and incorporates the allegations by reference herein as though fully set forth.

46.     Defendant Coastal had fiduciary duties to Plaintiff to act in her best interests to secure for her best loan available to them and not to engage in the fraudulent concealment and suppression of material facts and the self-enrichment alleged in the foregoing First, Second, and Fourth Claims for Relief.

47.     Defendant Coastal promised a fixed-rate mortgage to the Plaintiff. Instead of a fixed-rate mortgage, the Plaintiff was offered an unsustainable adjustable rate mortgage.

48.     Defendant Coastal further breached its fiduciary duties to the Plaintiff by providing the Plaintiff with a false Final TILA statement.

49.     Defendant Coastal furthered breached its fiduciary duties to the Plaintiff by failing to inform the Plaintiff that the initial interest-only payment would be insufficient to cover the cost of the loan.

50.     By knowingly and intentionally engaging in the above-described fraudulent concealments and self-serving conduct and in not advising Plaintiff that she

was being put into a loan that Coastal knew or should have known she could not afford, Defendant Coastal breached those fiduciary duties it owed to Plaintiff.

51.     Plaintiff is informed and believes and, based thereon, alleges that as a legal result of said breaches of fiduciary duties by Defendant Coastal, Plaintiff suffered economic damages in an amount exceeding $500,000.00, or to be proven at trial.

52.     Further, Plaintiff is informed and believes and, based thereon, alleges that as a legal result of said breaches of fiduciary duties by Defendant Coastal, Plaintiff has suffered general damages, including severe emotional distress, in an amount exceeding $500,000.00, or to be proven at trial.

53.     Defendant Coastal committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Plaintiff's rights.  Said conduct was carried out in a despicable, deliberate, cold, callous and intentional manner, thereby entitling Plaintiff to recover punitive damages from Defendant Costal, in an amount according to proof.

54.     Plaintiff did not discover the breach of fiduciary duty by Defendant Coastal until July 22, 2009 after a review of her loan documents.  Plaintiff did not know that Coastal betrayed her trust until she reviewed the full report that was created by mortgage professionals and had no reason to suspect any breach beforehand.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## FOURTH CLAIM OF RELIEF

### (Constructive Fraud)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for constructive fraud against Defendant Coastal, alleges as follows:

55.     Plaintiff repeats and re-alleges paragraphs 1 through 62 and incorporates the allegations by reference herein as though fully set forth.

56.     Defendant Coastal had a fiduciary relationship with the Plaintiff as the Plaintiff's mortgage broker.

57.     As alleged previously above and below, Defendant Coastal made false statements and provided false documents about the affordability of the loan and forwarded false documents to the Plaintiff.

58.     Defendant Coastal gained an advantage because Plaintiff trusted the expertise of Defendant Coastal because Defendant Coastal was supposed to look out for her best interests.

59.     Plaintiff justifiably relied upon Defendant Coastal's misrepresentations and material omissions as alleged above and below in this Second Amended Complaint.

60.     Plaintiff has suffered economic damages in excess of $500,000.00, or in an amount to be proven at trial, as a result from the fraudulent concealments by Defendant Coastal.

61.     Further, Plaintiff is informed and believes and, based thereon, alleges that as a legal result of said fraudulent concealments by Defendant Coastal, Plaintiff has suffered general damages, including severe emotional distress, in an amount exceeding $500,000.00, or to be proven at trial.

62.     Defendant Coastal committed the acts herein alleged maliciously, fraudulently, and oppressively, with the reckless disregard of Plaintiff's rights.   The conduct of Defendant Coastal was part of a business plan authorized by the highest level of management to obtain the highest possible unlawful yield spread premiums by placing clients into high risk mortgages.   The conduct by the Defendant Coastal amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manner motivated by greed and employed in a cunning manner as part of Defendant Coastal's practices and procedures to ignore industry standards in loan underwriting so which thwarts the purpose of Congress in passing the TILA so as to make unseemly profits and by taking advantage of persons such as Plaintiff entitling Plaintiff to recover punitive damages from Defendant Coastal, in an amount according to proof.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## FIFTH CLAIM FOR RELIEF

**[Violation of 12 USCA § 2605 (e) 24 CFR § 3500]**

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for violation of RESPA 12 U.S.C. § 2605 against Defendant OCWEN, alleges as follows:

64.     Plaintiff repeats and repleads paragraphs 1 through 63 and incorporates the allegations by reference therein as though set forth below.

65.     At all times relevant herein, payments were received by OCWEN acting as the loan servicers on the loan secured by the first deed of trust recorded against the subject Property.

66.     On or about September 2, 2009, Plaintiff, through counsel, sent a Qualified Written Request ("QWR") via certified mail to OCWEN pursuant to 12 USCA § 2605 (e) and Regulation X at 24 CFR 3500.  Such request, in summary, sought information on whether or not the loan was in lawful compliance with all federal and state laws regarding disclosure, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiff, all debits and credits to the Plaintiff's accounts, documentation of all mortgage assignments, accounting of all attorney fees, costs and foreclosure fees, and all late charges assessed to the balance of the loan, an accounting of all monies applied to suspended or forbearance accounts,  an accounting of all impounds including taxes and insurance and the fees, charges and commissions paid to all servicers of the account.

67.     OCWEN has a statutory duty pursuant to RESPA [12 USCA § 2605 (e) and Regulation X at 24 CFR 3500] to provide information requested by such requests. Despite such duty OCWEN did not respond.  As a result, Plaintiff does not have the requested information including the current party claiming a beneficial interest in the note, the identity of all holders of the note secured by the deed of trust, the calculation of the principal and interest, information on the appointment of the trustee and all substitute

trustees, documentation of all assignments, transfers or sale of the note, copies of all checks or other evidence of payments made by the Plaintiff, all debits and credits to the Plaintiff's accounts, documentation of all mortgage assignments and an accounting of all attorney fees, costs.

68.   As a result of the above, Plaintiff requests the court to order an accounting of all monies received and expenditures made involving the loan account and to provide the identity of any party now claiming a beneficial interest in the note so Plaintiff can determine if there is in fact any monies due under the note, if any amounts are actually due on the note which may have been paid-off by insurance or by government program and if the proper parties are named in the lawsuit and if there exists a current underlying obligation secured by the deed of trust recorded against her home that can be used as the bases for a trustee's sale of the Property under the deed of trust. Plaintiff is informed and believes that the note may have already been paid by a third party either through a government program or through private mortgage or other counter party insurance.  As a result such information is necessary to determine if the security deed of trust was a valid lien against the Property and whether or not the foreclosure and potential loss of the home by way of a trustee's sale through the non judicial foreclosure process is proper.

69.   An accounting is necessary to determine if monies are owed to Plaintiff by way of set-off to the balance of the mortgage or any future claim to damages claimed by the beneficiary of the note and the identify of each party that claims to have a beneficial interest in the note.  All such information is known only to or can only be ascertained by OCWEN.  Plaintiff has no other means to determine if a balance is owed to them and the proper parties to be joined to this lawsuit.

70.   As a result of the failure to respond fully respond by providing the requested documents Plaintiff is entitled to actual damages in an amount to be proved as well as statutory damages and attorney fees as Plaintiff is informed and believes that OCWEN has engaged in a pattern and practice of not responding to borrower inquires

especially as they relate to the identity of the note holders.  Such lack of response is used as a method of shielding the beneficiary of deeds of trust from the necessity of proving the existence of a valid underlying obligation so that OCWEN can foreclose against persons, including Plaintiff and to collect payments that are not actually due.  The amount of money due, if any, from Plaintiff to OCWEN is unknown to Plaintiff and cannot be determined without an accounting.  In addition, the party claiming to be a holder in due course of the promissory note signed by Plaintiff is currently unknown and is a necessary or proper party to the lawsuit.

ALL FOR WHICH PLAINTIFF SEEKS ACCOUNTING, DAMAGES AND OTHER RELIEF AS PRAYED.

## SIXTH CLAIM FOR RELIEF
### (Violations of TILA)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Violation of TILA against Defendants Greenpoint and Coastal, and DOES 1-10, alleges as follows:

71.     Plaintiff repeats and repleads paragraphs 1 through 70 and incorporates the allegations by reference therein as though set forth below.

72.     Plaintiff is informed and believes, and thereon alleges, that Defendants Greenpoint and Coastal in concert with their agents, have engaged in acts or practices in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, as amended, and TILA's implementing Regulation Z, 12 C.F.R. §226, as amended.

73.     The terms "amount finance," "annual percentage rate," "closed-end credit," "consumer," "consumer credit," "consummation," "credit," "creditor," "dwelling," "finance charge," "mortgage," "open-end credit," "payment schedule," "points and fees," "residential mortgage transaction," "reverse mortgage transaction," "security interest," and "total of payments" are defined as set forth in Sections 103 and 128 of TILA, 15 U.S.C. §§ 1602 and 1638, and Sections 226.2, 226.4, 226.18, 226.22,

226.32, and 226.33 of Regulation Z, 12 C.F.C. §§ 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33.

74.     The term "Regulation Z" means the regulation of the FRB promulgated to implement TILA and HOEPA, 12 C.F.R. 226, as amended.  The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp.1, as amended.

75.     The term "TILA" means the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j, as amended.  TILA, which took effect on July 1, 1969, is intended to promote the informed use of consumer credit by requiring creditors to disclose credit terms and costs, requiring additional disclosures for loans secured by consumers' homes, and permitting consumers to rescind certain transactions that involve their principal dwellings.

76.     Plaintiff is informed and believes, and thereon alleges, that Defendant Greenpoint was a "creditor" as that term is defined in Section 103(f) of TILA, 15 U.S.C. § 1602(f), and Section 226.2(a)(17) of Regulation Z, 12 C.F.R. § 226.2(1)(17), and therefore is required to comply with applicable provisions of TILA, HOEPA, and Regulation Z.  The loan Defendant Greenpoint with the assistance of Coastal made to the Plaintiff in this action is a mortgage loan covered by TILA and Regulation Z.

77.     Plaintiff is informed and believes, and thereon alleges, that in the course and conduct of offering and making the TILA mortgage loan to Plaintiff, Defendants Greenpoint and Coastal violated the requirements of TILA and Regulation Z by failing to make required disclosures in the following respects by:

(a)     failing to disclose in writing the a right of rescission three days prior to closing in violation of 12 C.F.R. § 226.23 (a), (f);

(b)     failing to make written disclosures of the finance charge and the APR in violation of  C.F.R. § 226.18 (d) (1) Regulation Z, 12 C.F.R. § 226.31(b) and (C)(1);

(c)     failing to disclose a historical example of maximum interest rates and payments for adjustable-rate mortgages in violation of  C.F.R. § 226.19 (b)(2)(viii);

20

(d)      failing to disclosure the Consumer Handbook on Adjustable-Rate Mortgages ("CHARM Handbook") in violation of C.F.R. § 226.19(b)(1)-(2).

(e)      failing to properly provided a property/hazard insurance disclosure in violation of 12 C.F.R. § 226.4(d)(2).

78.      Plaintiff is additionally informed and believes, and thereon alleges, that in the course and conduct of offering and making the mortgage loans to Plaintiff, Defendants Greenpoint and Coastal violated the requirements of Regulation Z prohibiting asset-based lending, by engaging in a pattern or practice of extending such credit to Plaintiff, based on Plaintiff's collateral rather than considering Plaintiff's current and expected income, current obligations, and employment status to determine whether the consumer is able to make the scheduled payments to repay the obligation, in violation of Section 129(h) of TILA, 15 U.S.C. § 1639(h), and Section 226.32(e)(1) of Regulation Z, 12 C.F.R. § 226.32(e)(1).

79.      Plaintiff has suffered, and will continue to suffer as the legal result, substantial injury as a result of the violations of TILA by Defendants Greenpoint and Coastal as set forth above.

80.      Plaintiff is informed and believes, and thereon alleges, that as a result of the conduct of Defendants Greenpoint and Coastal, Plaintiff is entitled to certain amounts already paid, including interest, finance charges and closing costs, as an offset against amounts owing on the loan, and collect statutory damages and attorney fees as well.

81.     The statute of limitations tolled on July 23, 2009 because the Plaintiff was unaware of the violation of TILA until her loan documents were analyzed by mortgage professionals as part of a forensic loan audit, whereupon a report was issued on July 23, 2009.  Plaintiff, who is primarily a Spanish speaker, has no mortgage experience calculating the proper cost of loans so the violation of TILA was not obvious on the face of the documents.  In particular, it took a mortgage professional to discover the violation of the TILA because it is more complex to calculate the proper cost of an adjustable rate loan based on a floating index such as the LIBOR index.  As such, Plaintiff was in no position to discover the violation of TILA until July 23, 2009.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## SEVENTH CLAIM FOR RELIEF
### (Violation of RESPA, 12 U.S.C. § 2607)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Violation of RESPA against Defendants Greenpoint and Coastal, and DOES 1-10, alleges as follows:

82.     Plaintiff repeats and repleads paragraphs 1 through 81 and incorporates the allegations by reference therein as though set forth below.

83.     In creating the loan Defendants Greenpoint and Coastal engaged in acts or practices in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.A  § 2607 by providing a "federally related loan" to the Plaintiff.

84.     The terms "federally related mortgage loan," "creditor," "thing of value," "settlement services," "title insurance company," "person," "Secretary," "affiliated business arrangement," and "associate" are defined as set forth in 12 U.S.C.A. § 2602.

22

85.     The term "RESPA loan" means any loan (other than temporary financing such as a construction loan) which is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government, or is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation; or is made in whole or in part by any "creditor", as defined in <u>section 1602(f) of Title 15</u>, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.  12 U.S.C.A. § 2602 (A) & (B) (i)(ii)(iii)(iv).

86.     Plaintiff is informed and believes, and thereon alleges, that in the course and conduct of offering and making the RESPA mortgage loan to Plaintiff, Defendants Greenpoint and Coastal violated the requirements of RESPA, 12 U.S.C.A. § 2607 by partaking in the following:

(a)     providing a person with a fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b)      providing a fee portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

87.      The illegal yield spread premium was not reasonably related to any services provided by Defendant Coastal.

88.      Plaintiff has suffered actual damages of at least $2,875.00 for the unlawful yield spread premium, which served as a kickback to Defendant Coastal.

89.      Plaintiff is entitled to treble damages under 12 U.S.C. § 2607(d)(2).

90.      Plaintiff is entitled to reasonable attorney's fees and costs under 12 U.S.C. § 2607(d)(5).

91.      Defendants Greenpoint and Coastal are jointly and separately liable for the violation of section 2607.

92.      The violation of section 2607 was discovered within one year past after a forensic review of the Plaintiff's loan documents that occurred in or around July 22, 2009.  The Plaintiff is entitled to equitable tolling and the statute of limitations should began tolling on July 22, 2009 because the Plaintiff, who is primarily a Spanish speaker, had no reason to suspect a violation of section 2607 because the illegal yield spread premium was not adequately disclosed to the Plaintiff.   Since the Plaintiff is not a mortgage professional, she had no means to discover the violation of Section 2607 prior to having her loan documents reviewed by mortgage professionals, who prepared a report of their findings on or about July 22, 2009.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

## EIGHTH CLAIM FOR RELIEF
### (Quiet Title)

COMES NOW PLAINTIFF, and for a separate and distinct CLAIM FOR RELIEF for Quiet Title against all Defendants claiming a right or interest in the subject property, allege as follows:

93.     Plaintiff repeats and repleads paragraphs 1 through 92 and incorporates the allegations by reference therein as though set forth below.

94.     Plaintiff is the owner in fee of title to property commonly known as 2053 Miller Avenue Escondido, CA 92025. The basis of Plaintiff's title is a grant deed to the property.  The Legal Description of said property is as follows:

APN: 236-333-40

LEGAL DESCRIPTION: THE NORTHEASTERLY HALF OF THE SOUTHESTERLY 264 FEET OF LOT 4 IN BLOCK 3 OF HOMELAND ACRES ADDITION TO ESCONDIDO, IN THE CITY OF ESCONDIDO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF NO. 1205, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 1, 1909.

EXCEPTING THEREFROM THE NORTHEASTERLY 241.68 FEET THEREOF.

95.     Defendant AZTEC FORECLOSURE CORPORATION as the Trustee and/or MERS as nominee for an undisclosed principal designated herein as DOE 4, claim and assert interests or threaten to conduct a trustee's foreclose sale of the above-described real property and such claimed interests and right to foreclose are adverse to Plaintiff. The claims of defendants are based on the deeds of trust.  Aztec had no right to file the NOD on May 27, 2009 because it was not substituted as the Trustee on the First Deed of Trust until two months later.  As such, there was no public agency relationship between Aztec and the beneficiary of the mortgagage and the Notice of Default and Notice of Sale should be retracted.

96.     The deeds of trust are invalid and void as to Plaintiff's property because Plaintiff is entitled to offsets against the promissory notes that are secured by the deeds of trusts, and these offsets are greater in amount than the sum that would otherwise be due under the promissory notes, and/or Plaintiff is entitled to rescission of the promissory

25

notes and deeds of trust such that Defendant's claim to the property is released. Additionally, each Defendant has waived tender as the result of their failure to comply with CC §§ 2923.5 and 2923.6 and tender is not required pursuant to CC § 1632.

97.    Plaintiff seeks to quiet title as of the date the complaint is filed.

ALL FOR WHICH PLAINTIFF SEEKS DAMAGES AND OTHER RELIEF AS PRAYED.

ALL FOR WHICH PLAINTIFF PRAYS AS SET-FORTH BELOW.

**On the First Claim for Relief for Intentional Misrepresentation:**

1. Compensatory damages in an amount in excess of $500,000, or to be proven at trial;

2. General damages in an amount in excess of $500,000, or to be proven at trial;

3. Punitive damages in an amount to be proven at trial;

**On the Second Claim for Relief for Fraudulent Concealment:**

1. Compensatory damages in an amount in excess of $500,000, or to be proven at trial;

2. General damages in an amount in excess of $500,000, or to be proven at trial;

3. Punitive damages in an amount to be proven at trial;

**On the Third Claim for Relief for Breach of Fiduciary Duty:**

1. Compensatory damages in an amount in excess of $500,000, or to be proven at trial;

2. General damages in an amount in excess of $500,000, or to be proven at trial;

3. Punitive damages in an amount to be proven at trial;

**On the Fourth Claim for Relief for Constructive Fraud:**

4. Compensatory damages in an amount in excess of $500,000, or to be proven at trial;

5. General damages in an amount in excess of $500,000, or to be proven at trial;

4. Punitive damages in an amount to be proven at trial;

**On the Fifth Claim for Relief for Violations of RESPA:**

1. Accounting;

2. Actual and Statutory Damages;

3. Attorneys' and costs as applicable

**On the Sixth Claim for Relief for Violations of TILA:**

1. Actual Damages;

2. Statutory Damages;

3. Attorneys' fees and costs as per statute;

**On the Seventh Claim for Relief for Violations of RESPA:**

1. Actual Damages;

2. Treble Damages;

3. Attorneys' fees and costs;

**On the Eighth Claim for Relief for Quiet Title:**

1. General damages in an amount to be proven at trial;

2. Special damages in an amount to be proven at trial;

3. Rescission;

27

**<u>On all Claims for Relief:</u>**

1. Costs of suit;

2. Attorneys fees; and

3. Such other relief as the court deems just and proper.

DATED: March 19, 2010                                    KENT C. WILSON

                                                  By:<u>/s/ Kent C. Wilson__</u>
                                                     Kent C. Wilson
                                                     Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SECOND AMENDED COMPLAINT OF LOURDES SANCHEZ
LOURDES SANCHEZ v GREENPOINT MORTGAGE FUNDING, INC., et. al.

1
2
3

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
LOURDES SANCHEZ v. GREENPOINT MORTGAGE FUNDING, et al.

4

## PROOF OF SERVICE BY MAIL

5
6
7
8
9
10

    I declare that I am a citizen of the United States and reside in City of San Diego, State of California.  I am over the age of 18 years and not a party to the within case or proceeding.  My business address is 943 Imperial Avenue, Suite "G," Calexico, CA 92231 and ONE AMERICA PLAZA, 600 W. Broadway, 7th floor, San Diego, CA 92101.

11
12
13
14
15
16

    On March 19, 2010, I served a true and correct copy of the within document entitled: "SECOND AMENDED COMPLAINT" on the parties and/or their attorneys of record, by causing the above said Notice to filed electronically with the Clerk of Court and served electronically through the CM/ECF system on all parties of record.

17
18
19
20
21

    I certify and declare the above to be true under penalty of perjury and that this proof of service is dated March 19, 2010, at San Diego, California.

22
23
24

                By: /S/ Kent C. Wilson
                     Kent C. Wilson
                     Attorney At Law

25
26
27
28